**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DE ANTOINE WARREN, individually and as a representative of the class,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:16-cv-5589** |
| **v.** | ) ) | |
| **MEIJER, INC.,** | ) ) | **(JURY TRIAL REQUESTED)** |
| **Defendant.** | ) ) ) | |

## AMENDED COMPLAINT

DE ANTOINE WARREN ("Plaintiff"), by and through his attorneys, on behalf of himself and the class set forth below, brings this Amended Class Action Complaint against MEIJER, INC. ("Defendant" or "Meijer"), its subsidiaries and affiliates, and alleges, upon personal belief as to himself and his own acts, and as for all other matters, upon information and belief, and based upon the investigation made by his counsel, as follows:

## INTRODUCTION

1.     This consumer class action is brought under the Fair Credit Reporting Act ("FCRA") against a company who routinely and systematically violates the FCRA's basic protections by failing to provide required disclosures prior to procuring background reports on applicants and employees.

2.     As Defendant's practices were routine and systematic, Plaintiff asserts claims for damages on behalf of himself and a class of similarly-situated individuals on whom Defendant caused a consumer report to be procured without first providing the required stand-alone disclosure.

1

## THE PARTIES

3.     Plaintiff De Antoine Warren is an adult resident of Cook County in Illinois.

4.     Defendant Meijer, Inc. is a foreign corporation that does business in this state and in this District.

## JURISDICTION AND VENUE

5.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff lives and applied to work in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant operates in this District.

## STATUTORY BACKGROUND

7.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job, credit, or for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

8.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

9.     Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes. *See* 15 U.S.C. § 1681a(d)(1)(B).

10.     Through the FCRA, Congress required employers to disclose that a consumer report may be obtained for employment purposes before procuring the report. 15 U.S.C. §

2

1681b(b)(2)(A)(i).

11.    Specifically, Congress made it unlawful for an employer or prospective employer to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless . . . a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). This requirement is frequently referred to as the "stand-alone disclosure requirement."

12.    Many other provisions of the FCRA are also notice provisions. *See* 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

13.    Like the other notice provisions in the FCRA, the stand-alone disclosure provision places consumers on notice that a report about them may be prepared. This knowledge enables consumers to exercise a variety of other substantive rights conferred by the statute, many of which work to ensure accuracy, confidentiality, and fairness. 15 U.S.C. § 1681c(a) (limiting temporal scope of information that can be reported); § 1681e(b) (mandating that consumer reporting agencies employ procedures to ensure "maximum possible accuracy" in reports); § 1681k (requiring consumer reporting agencies that report public record information to employers to either provide notice to the consumer that information is being reported or have "strict procedures" to ensure that information is "complete and up to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed information); § 1681g (requiring that

consumer reporting agencies provide a complete copy of the consumer's file to the consumer).

14.     Without a clear notice that a consumer report is going to be procured on them, applicants are hindered in their ability to preserve their privacy, and to correct errors or other problems with the reports.

15.     As discussed below, Defendant routinely violated the FCRA, and consumers' rights, by failing to provide the required stand-alone disclosure before procuring consumer reports for employment purposes.

16.     As a result of Defendant's wrongful acts and omissions, Plaintiff and other putative class members have been injured, without limitation, by having their privacy and statutory rights violated.

17.     As further alleged herein, Defendant's violations occurred because Defendant has willfully failed to properly apprise itself of the statutory mandates before procuring consumer reports to make employment decisions, violated the express and unambiguous provisions of the relevant statute, and/or recklessly failed to implement reasonable procedures to assure compliance with statutory mandates.

18.     On behalf of himself and the putative class, Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and other appropriate relief for Defendant's systematic and willful violations of the FCRA.

## ALLEGATIONS RELATING TO PLAINTIFF

19.     Upon information and belief, throughout the two years preceding the filing of this action, Defendant has routinely procured consumer reports on applicants and employees from consumer reporting agencies as part of a standard pre-employment screening process.

20.     Defendant does not perform these background checks in-house.     Rather, Defendant relies on outside consumer reporting agencies to obtain this information and report it

4

to Defendant.

21.     A consumer reporting agency is a company that "for monetary fees . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer report to third parties . . .." 15 U.S.C. § 1681a(f).

22.     On or around May 28, 2014, Plaintiff applied to work as a customer service line leader for Defendant in the State of Illinois.

23.     As part of the online employment application process and in order to be considered for a position, Defendant required Plaintiff and others similarly situated to electronically check an "I Accept" box on a "Background Check Consent" screen authorizing a background check to be procured on them. ("Disclosure Form").  (*See* Exhibit 1).[1]

24.     The Disclosure Form is not a stand-alone disclosure and does not comply with the requirements of § 1681b(b)(2).

25.     Rather, the form contains extraneous information that violates the FCRA's stand-alone disclosure requirement.  *Id.*

26.     The Disclosure Form goes much further than merely authorizing Defendant to procure a report.   Instead, it includes a blanket authorization that is entirely extraneous information.

27.     For example, the disclosure indicates "I hereby authorize Meijer and/or its agents to make an independent investigation . . . including those maintained by both public and private

---

[1] Defendant has voluntarily produced a revised Disclosure Form that apparently went into effect at some point after Plaintiff executed his Disclosure Form.  The revised Disclosure Form, attached as Exhibit 2, is materially identical to the Disclosure Form that Plaintiff executed except that the revised Disclosure Form contains additional extraneous language, specifically, the inclusion of the terms "gender identity or expression" and the change of terms from "legally-protected classification" to "lawfully-protected classification" in the last sentence.  For purposes of this Amended Complaint, the term "Disclosure Form" refers to both the document Plaintiff executed and the revised version.

organizations . . . for the purpose of . . . obtaining *other information* which may be material to my qualifications for employment now and, if applicable, during the tenure of my employment with Meijer. *Id.*

28.     The FCRA allows only a single exception to the requirement that employers provide applicants and employees with a document consisting solely of the disclosure that a consumer report will be procured for employment purposes. Specifically, the statute states that the disclosure may include a written authorization for the employer to procure the report. 15 U.S.C. 1681b(b)(2)(a) states:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless –
>
> (i)     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and,
>
> (ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

29.     The Disclosure Form essentially provides the Defendant with a vast and limitless authorization to procure consumer reports without further disclosure, as required under § 1681(b)(2)(A).

30.     Defendant's inclusion of this extraneous information was intentional and self-interested. In particular, this language allowed Defendant and its consumer reporting agency to procure information on employees, at any time during their employment, and purported to operate as a functional waiver of employees' privacy rights.

31.     The Disclosure Form is essentially a blanket privacy waiver through which the applicant consents to "authorize" any person or entity who possesses any information concerning

6

the applicant, to divulge such information whether otherwise lawful or appropriate to do so.

32.     Because the Disclosure Form includes a vast and limitless release of information that applies to third parties' provision of information, it violates the FCRA.

33.     State and federal agencies, schools, financial institutions, and other entities, all of which may fall within the broad authorization language included in the form, are subject to specific privacy laws which regulate nonpublic information.   For example, the Family Educational Rights & Privacy Act, 20 U.S.C. § 1232g; 34 CFR Part 99, protects school records from disclosure absent consent from the student.   Similarly, the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, requires financial institutions to safeguard nonpublic information, and the Health Insurance Portability and Accountability Act, which sets forth its Privacy Rule at 45 CFR Part 160, and Subparts A and E of Part 164, requires covered institutions to keep medical records private.

34.     Most states' government data laws are even more restrictive, and prohibit the disclosure of information on individuals held by many state agencies.   *See, e.g.*, Russom, Miriam B., Robert H. Sloan, and Richard Warner, *Legal Concepts Meet Technology: A 50 State Survey of Privacy Laws*, Proceedings of The 2011 Workshop on Governance of Technology, Information,     and     Policies-GTIP     '11     (2011),     (available     at https://www.acsac.org/2011/workshops/gtip/p-Russom.pdf).

35.     Defendant's blanket authorization in the Disclosure Form, however, purports to essentially waive these carefully promulgated protections that protect the privacy of personal information held by the government and others.

36.     By including this broad release of information in its forms, Defendant placed its own interest ahead of those of the consumers.   Defendant's inclusion of the release of information made it easier for Defendant to gather information about employees and applicants,

and protected themselves and third parties from liability for acquiring such information. This benefit to Defendant came at the expense of consumers' statutory right to receive a compliant disclosure.

37.     The Disclosure Form also violates the FCRA in other ways as well.

38.     For example, the second sentence of the Disclosure Form notes and essentially requires applicants, including Plaintiff and others similarly situated, to electronically check the "I Accept" box authorizing a background check to be procured on them in order to be considered for a position. *Id.* As noted in the Disclosure Form, "[i]f you decline the background check, your job submission might be automatically excluded from consideration for this position." *Id.*

39.     This statement is not a mere authorization to procure a consumer report or a stand-alone disclosure of the fact that a report may be procured for employment purposes. Rather, this statement is extraneous information that renders any disclosure required under the FCRA not "clear and conspicuous" and also not a document consisting "solely" of the disclosure. Accordingly, the inclusion of this statement on the Disclosure Form, alone, violates the FCRA.

40.     The Disclosure Form contains additional extraneous information, such as: a statement confirming the accuracy of the applicant's legal name and a statement informing the applicant of the purposes of the information Defendant is requiring as well as Defendant's commitment as an Equal Opportunity Employer and its duties to not discriminate based on legally-protected classifications.

41.     None of these statements is a mere authorization for Defendant to procure a consumer report or a stand-alone disclosure of the fact that a report may be procured for employment purposes. Accordingly, the Disclosure Form does not constitute as a stand-alone disclosure required under the FCRA.

8

42.     Defendant's failure to provide a stand-alone disclosure violates a fundamental protection afforded to employees under the FCRA, is contrary to the unambiguous language of the Act, and is counter to FTC guidance and case law.  In fact, the FTC has stated that disclosure forms must not be "encumbered by any other information . . . [in order] to prevent consumers from being distracted by other information side-by-side with the disclosure."  *See* Letter from Clarke W. Brinckerhoff, Fed. Trade Comm'n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998) (emphasis added) (*See* Exhibit 3).   Defendant's Disclosure Form runs afoul of this requirement.

43.     Despite Defendant's failure to provide a compliant stand-alone disclosure and authorization to Plaintiff, Defendant procured a consumer report on Plaintiff.

44.     Plaintiff suffered concrete harm from Defendant's actions in at least two ways.  First, Defendant invaded Plaintiff's right to privacy.   Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e. disclosure and authorization) set forth in the following subsections. 15 U.S.C. § 1681b(b)(2).  As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization."  *Harris v. Home Depot, U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).   By procuring Plaintiff's report without complying with these requirements, and by requiring Plaintiff to purport to waive numerous other privacy rights, Defendant invaded Plaintiff's privacy.

45.     Second, Plaintiff has suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which he was entitled by statute. *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989); *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).

## ALLEGATIONS RELATING TO DEFENDANT'S PRACTICES

46.     The text of the FCRA is pellucid and clear.  Defendant is required to obtain written authorization and provide a disclosure in a document consisting solely of the disclosure before procuring consumer reports.

47.     The disclosure Defendant provided does not comply with the FCRA's plain language because it includes, *inter alia*, extraneous information.

48.     Numerous courts have found the inclusion of this kind of information to violate the FCRA.  *See, e.g., Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 333 (S.D.N.Y. 2015) (finding disclosure to not stand-alone when it included, among other things, "all sorts of state-specific disclosures"); *Groshek v. Time Warner Cable, Inc.*, No. 15-C-157, 2015 U.S. Dist. LEXIS 100328, at *4-5 (E.D. Wis. July 31, 2015) ("[T]he Court agrees with the plaintiff and those courts which maintain that the language of the statute is simple and straightforward. [Defendant] acted recklessly by including extraneous information in the disclosure."); *Martin v. Fair Collections & Outsourcing, Inc.*, No. GJH-14-3191, 2015 U.S. Dist. LEXIS 86129, at *10 (D. Md. June 30, 2015) (denying motion to dismiss where form "contain[ed] an authorization to obtain the report, information on when the applicant must challenge the accuracy of any report, an acknowledgement that the employee understands that 'all employment decisions are based on legitimate non-discriminatory reasons,' the name, address and telephone number of the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report, and several pieces of state-specific information"); *Moore v. Rite Aid Hdqtrs Corp.*, No. CIV.A. 13-1515, 2015 U.S. Dist. LEXIS 69747, at *35 (E.D. Pa. May 29, 2015) ("[T]he text of the statute and the available agency guidance demonstrate[] that the inclusions of information on the form apart from the disclosure and related authorization violates § 1681b(b)(2)A)."); *Rawlings v. ADS Alliance Data Sys., Inc.*, No. 2:15-CV-04051-NKL, 2015

U.S. Dist. LEXIS 81055, at *12, 13 (W.D. Mo. June 23, 2015) (stating "[w]here the FCRA's language is clear, a dearth of guidance does not justify an objectively unreasonable interpretation of the statute" and denying motion to dismiss where form contained extraneous state law disclosures and plaintiff alleged that defendant "knowingly used a disclosure form . . . that contained extraneous information in violation of the FCRA"); *Miller v. Quest Diagnostic*, 85 F. Supp. 3d 1058, 1061 (W.D. Mo. 2015) (finding "inclusion of the state-mandated consumer report information, administrative sections, and release language in the disclosure violates 15 U.S.C. § 1681b(b)(2)"); *Johnson v. Casey's Gen. Stores, Inc.*, __ F. Supp. 3d __, No. 6:15-CV-30860MDH, 2015 U.S. Dist. LEXIS 100464, at *8 (W.D. Mo. July 27, 2015) (denying motion to dismiss stand-alone disclosure requirement, knowingly violated that requirement and acted in willful violation of the FCRA"); *see also E.E.O.C. v. Video Only, Inc.*, No. CIV. 06-1362-KI, 2008 U.S. Dist. LEXIS 46094, at *28 (D. Or. June 11, 2008) (granting summary judgement against the defendant-employer who made disclosure "as part of its job application which is not a document consisting solely of the disclosure."); *Harris v. Home Depot U.S.A., Inc.*, No. 15-CV-01058-VC, __F. Supp. 3d __, 2015 U.S. Dist. LEXIS 93576, at *5 (N.D. Cal. June 30, 2015) (holding that "a release of liability is separate and distinct from the disclosure and authorization" and finding plausible allegation that defendant "inserted this [release] into the disclosure form despite knowing that to do so would violate the FCRA, or at least with reckless disregard for the FCRA's requirements").

49.     Defendant knew that it had an obligation to provide a stand-alone disclosure and obtain the consumer's authorization before procuring a consumer report.

50.     By including the extraneous information in its disclosure, Defendant also deviated from a legally binding certification it provided to its consumer reporting agencies.

51.     The FCRA requires that, prior to procuring consumer reports, employers need to

certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure requirements.  *See* 15 U.S.C. § 1681b(b)(1).

52.    In accordance with their standard procedures, the consumer reporting agencies from whom Defendant acquired consumer reports during the two years preceding the filing of this Complaint, required Defendant to certify that it would comply with the stand-alone disclosure provisions of the FCRA.

53.    Defendant did, in fact, certify to consumer reporting agencies that it would comply with the stand-alone disclosure and authorization provisions of the FCRA.

54.    In its contract with those agencies, Defendant also agreed that before obtaining a consumer report, Defendant would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes and that such disclosure will be made in a document consisting solely of the disclosure.

55.    Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

56.    By systematically inserting extraneous information into Plaintiff's and other class members' disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i).

## CLASS ACTION ALLEGATIONS

57.    Plaintiff asserts his claims on behalf of the class defined as follows:

All individuals on whom Defendant procured a consumer report for employment purposes in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

58.    <u>Numerosity</u>:  The class is so numerous that joinder of all class members is impracticable.  Defendant employs thousands of workers, many of whom are members of the

class.

59. <u>Typicality</u>: Plaintiff's claims are typical of the class members' claims. The FCRA violations committed by Defendant were committed pursuant to uniform policies and procedures, and Defendant treated Plaintiff in the same manner as other class members in accordance with its standard policies and practices.

60. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the class, and has retained counsel experienced in complex class action litigation.

61. <u>Commonality</u>: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.

62. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the class on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

<strong><u>CLAIM FOR RELIEF</u></strong>

### *Failure to Provide Stand-Alone Disclosure*

63.    Defendant violated the FCRA by procuring consumer reports on Plaintiff and class members without making the stand-alone disclosure required by the FCRA. *See* 15 U.S.C. § 1681b(b)(2).

64.    Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other class members.

65.    Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2), and that Defendant certified that it would comply with 15 U.S.C. § 1681b(b)(2).

66.    Defendant's willful conduct is further reflected by the following:

(a)    The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

(b)    Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c)    Defendant repeatedly and routinely uses the same/similar unlawful document it provided to Plaintiff with all of its applicants and employees on whom it procured consumer reports or otherwise failed to provide them with the required stand-alone disclosure;

(d)    Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

14

      (e)    By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

67.    Plaintiff and the class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

68.    WHEREFORE, Plaintiff, on behalf of himself and the class, prays for relief as follows:

    a.    Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

    b.    Designating Plaintiff as Class Representative and designating Plaintiff's counsel as counsel for the class;

    c.    Issuing proper notice to the class at Defendant's expense;

    d.    Declaring that Defendant violated the FCRA;

    e.    Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

    f.    Awarding statutory damages as provided by the FCRA;

    g.    Awarding punitive damages as provided by the FCRA;

    h.    Awarding reasonable attorneys' fees and costs as provided by the FCRA;

    i.    Granting all other available relief, in law and in equity, as this Court may deem appropriate and just.

15

## <u>DEMAND FOR JURY TRIAL</u>

69.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the

class demand a trial by jury.


Dated:  August 24, 2016                    <u>*/s/ Andrew C. Ficzko*</u>

                                           STEPHAN ZOURAS, LLP
                                           Andrew C. Ficzko
                                           205 North Michigan Ave
                                           Suite 2560
                                           Chicago, IL 60601
                                           Telephone: 312-233-1550

                                           **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on August 24, 2016, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.


_/s/ Andrew C. Ficzko_____