IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DE ANTOINE WARREN, individually and as representative of the class, ) ) ) Plaintiff, ) ) v. ) ) MEIJER, INC., ) ) Defendant. ) | Case No: 16-cv-5589 (Jury trial requested) |

**MEIJER, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

In support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) Defendant Meijer, Inc. ("Meijer"), through its attorneys, hereby submits the following memorandum of law:

**INTRODUCTION**

In the alternative to its Motion to Compel Arbitration and Dismiss or Stay This Proceeding that was concurrently filed herewith, Meijer also moves to dismiss with prejudice the single claim for an alleged breach of the Fair Credit Reporting Act ("FCRA") contained in the Amended Complaint filed by Plaintiff, De Antoine Warren ("Plaintiff" or "Warren"). His FCRA claim is fatally flawed on many different grounds, any of which require dismissal. As a threshold matter, Warren failed to allege any concrete injury required for standing and, therefore, this Court lacks subject matter jurisdiction. Moreover, contrary to Warren's allegations, the stand-alone disclosure and authorization form in which he agreed to Meijer obtaining a consumer report as part of his online employment application did not contain "extraneous" information that violated the FCRA and was not "overbroad." Lastly, and in any event, Warren has not and

cannot establish, as he must, a "willful" violation of the FCRA. Therefore, if Warren's action is not precluded by his agreement to arbitrate, it must be dismissed with prejudice for the reasons stated below.

## A. STATEMENT OF FACTS

On May 9, 2014, Warren completed an online application for employment with Meijer. The application consists of seven (7) separate sections that each appeared on separate screens. The disclosure and consent form for a background check appeared on a separate screen with only content permitted by the FCRA. After proceeding to the Background Check Authorization Screen, Warren clicked the button labeled "I Accept" thereby authorizing approving Meijer to conduct a background check on him, Am. Compl. ¶23. A copy of the Disclosure Form was attached as Exhibit 1 to the Am. Compl. (and a color copy of this Form is attached as Exhibit A to this motion).

Warren was hired by Meijer in a managerial capacity as a Line Leader in Training. On June 20, 2014, during an orientation held on his first day of employment, Warren was presented with hard copies of various documents that he was asked to review and then electronically acknowledged his receipt, understanding, and agreement or completion of these documents that governed his employment.[1] Warren electronically agreed to documents as part of his orientation. Those documents included a Dispute Resolution Agreement and Agreement for Final and Binding Arbitration and a Dispute Resolution Policy.

Warren was terminated by Meijer on August 11, 2015, filed an initial Complaint on May 5, 2016, and the instant Amended Complaint on August 24, 2016, each alleging Meijer's criminal background check disclosure and authorization form violated the Fair Credit Reporting Act ("FCRA"). Meijer has filed a motion to compel arbitration based on the Arbitration Agreement

---

[1] Warren was also able to review those documents electronically.

that Warren signed and, in the alternative, has brought this motion to dismiss Warren's FCRA claim**.**

## ARGUMENT

### 1. This Court Lacks Subject Matter Jurisdiction Because Plaintiff Did Not Suffer Any Actual Harm (Fed. R. Civ. P. 12(b)(1)).

As a threshold matter, Warren's claim should be dismissed pursuant to Rule 12(b)(1) because he failed to adequately allege any actual injury-in-fact and, thus, he lacks standing and his Amended Complaint should be dismissed for lack of subject matter jurisdiction. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In *Spokeo*, the Supreme Court held that to have Article III standing to bring a claim under the FCRA, a plaintiff must properly allege an "actual injury" or "injury-in-fact," which is "not conjectural or hypothetical" and requires more than merely alleging the violation of a statute. *Id*. at 1546 and 1548. "A plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III'" for subject matter jurisdiction. *Id*. at 1549-50. Thus, the Supreme Court rejected the plaintiff's argument that he had pleaded an actual injury-in-fact by alleging that inaccurate information contained in his background report might have impacted his ability to obtain employment and remanded the case for a determination as to whether the plaintiff could establish an actual injury; holding that his pleading of such a theoretical possibility of injury was insufficient. *Id*. at 1550.

Likewise, Warren failed to allege that he has suffered any actual injury as a result of the alleged breach of the FCRA. He merely pleaded that Meijer may have obtained some unspecified information to which it was allegedly not entitled that might have breached his privacy and further alleged that Meijer failed to provide Warren with some equally amorphous information to which he was entitled, without articulating any actual harm resulting from either

3

of these alleged hypothetical privacy violations. Similar allegations have repeatedly been found insufficient to state a viable FCRA claim. In *Larroque v. First Advantage LNS Screening Solutions, Inc.,* 2016 U.S. Dist. LEXIS 119249 (N.D. CA. Sept. 2, 2016), for example, where (as with Warren) there was no question that the plaintiff signed a written consent to release a consumer report to a prospective employer for use in considering the applicant's employment, the court held that the plaintiff waived any argument regarding an invasion of privacy. *Id.* at *15. The *Larroque* court went on to hold that since "Plaintiff has alleged nothing more than a bare procedural violation of the FCRA – having provided express written consent to have her consumer report pulled, reviewed, and considered for purposes of employment, Plaintiff has not suffered an 'invasion of privacy' or any other concrete harm," and therefore, the court dismissed the complaint for lack of standing. *Id.* at *15.

The court in *Fisher v. Enter. Holdings,* 2016 U.S. Dist. LEXIS 120498 (E.D. Mo. Sept. 7, 2016) took a similar common-sense approach to the plaintiff's FCRA allegations that the defendants obtained a report without proper consent because the authorization that was executed by the plaintiff was not "clear and conspicuous" and "fail[ed] to include all of the proper information." Nonetheless, the court in *Fisher* held that the plaintiff there failed to plead a concrete injury because (as Warren) the plaintiff merely asserted that the defendants' disclosure form did not comply with the FCRA, but the "Plaintiff did not allege that she did not, in fact, see the disclosure, or that the language of the disclosure was poorly drafted, or otherwise incomprehensible. Nor did she allege that her authorization was not knowing." *Id.* *9. The same reasoning applies here because, like the plaintiff in *Fisher,* Warren failed to allege that the alleged violation of FCRA disclosure requirements in any way interfered with his ability to read and understand the disclosure form he signed or caused him any actual injury.

4

*See*, *also*, *Smith v. Ohio State University*, 2016 U.S. Dist. LEXIS 74612, *11 (S.D. Ohio June 8, 2016) where the plaintiffs' FCRA claim were dismissed because they alleged (like Warren) that they suffered harm when their "privacy was invaded and [that] they were misled as to their rights under the FCRA," but lacked any allegation of any concrete consequential damages suffered as a result of defendant's alleged FCRA violation. *Id. at *11.*

Allegations of harm were also insufficient, and the lawsuit dismissed in *Groshek v. Time Warner Cable, Inc.,* 2016 U.S. Dist. LEXIS 104952, *7 (E.D. WI. Aug. 9, 2016), where, as here, the complaint alleged that the defendant obtained an improper consumer report as a result of an inadequate disclosure and consent form, but did not allege that he did not get the job applied for as a result of the consumer report, that the defendant released the information to third parties causing him harm, or that the defendant used the consumer report against him in any way. *Id. at *7.* Warren's Amended Complaint likewise lacks these allegation of any actual or concrete harm.

Like the unsuccessful plaintiffs in the *Larroque, Smith,* and *Groshek* cases, Warren merely alleged conclusory violations of his privacy and specious procedural violations, but he failed to plead any concrete harm or injury-in-fact as required by *Spokeo*. For example, he did not allege that he was denied a job (indeed Meijer hired Warren), or that Meijer actually received any specific information to which it was not entitled, that Meijer released any information to any third parties, or that Meijer failed to provide him with any specific information he was entitled to receive. *See,* Am. Compl. ¶44-45. Moreover, Warren never disputes the fact that he authorized Meijer to perform a background check and that he knew he was authorizing the release of information for a consumer report. All of these deficiencies mandate dismissal of Warren's FCRA claim.

5

Recognizing that his contradictory assertions about getting too much and too little information from Meijer do not add up to a concrete injury, Warren's Amended Complaint made the equally unsupportable argument that Meijer's consent was so broad that it was "possible" that all private and public entities "may fall within" the consent authorization and might release some unstated information about Warren without those unnamed organizations following other statues' requirements for releasing information. *See,* Am. Compl. ¶¶ 32-33. Like those insufficient in *Spokeo¸* Warren's allegations are inadequate to establish an injury-in-fact. 136 S. Ct. at 1550. Inasmuch as Warren's allegations of injury are hypothetical and speculative, and he has not alleged any concrete injury-in-fact, Warren has no standing and this Court lacks subject matter jurisdiction. Consequently, Meijer requests that Warren's Amended Complaint be dismissed.

### 2. **Plaintiff Has Failed To State A Claim Under the FCRA.**

#### a. **Legal Standard**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under the federal notice pleading standards articulated by the Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level" and had "state a claim to relief that is plausible on its face." Warren's allegations of a FCRA violation do neither.

#### b. **Meijer's Disclosure Form did not contain any impermissible "extraneous language".**

Plaintiff alleges that Meijer's stand-alone Disclosure form violates the FCRA because it contains "extraneous" information in addition to the disclosure and authorization. Plaintiff

6

argues that a viable authorization must consist of "only" the authorization. To the contrary, even a cursory review of Meijer's Authorization for Background Check form attached hereto as *Exhibit A* demonstrates that it provided notice to Warren that a consumer report may be obtained by Meijer for employment purposes and that the authorization was sought in a stand-alone document comprised "solely" of the disclosure and authorization of the disclosure. It was neither contained any extraneous information that violated the FCRA nor was impermissibly "overbroad" in any way. The FCRA states:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless —
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause(i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A).

Although Warren attempts to focus myopically on the statutory language that the disclosure form must consist "solely of the disclosure," his list of allegedly invalid "extraneous language is specious. For one thing, the FCRA itself specifically allows the consumer's authorization for the background check to be made on the "same document that provides the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(ii); *Just v. Target Stores*, 2016 U.S. Dist. LEXIS 63126, *8 (D. Minn. May 12, 2016)(relying on two FTC opinions).

Contrary to Warren's assertion, the box at the bottom of the Meijer disclosure and authorization form allowing Warren to obtain a copy of his consumer report did not violate the FCRA because this information comports with the right under the FCRA to obtain a copy of the

7

applicant's consumer report each year. *See, Just*, 2016 U.S. Dist. LEXIS 63126 at \*8 and \*13 (ruling that language in a stand-alone disclosure form about an applicant's right to request information about the nature and scope of a consumer report and to obtain a copy of his consumer report did not confuse or distract consumers or constitute extraneous information that violated the FCRA); *Coleman v. Kohl's Dep't. Stores, Inc.,* 2015 U.S. Dist. LEXIS 135746, \*17 (N.D. Cal. Oct. 5, 2015) (holding that a disclosure and consent form containing relevant information about the consumer's right to review his consumer report complied with the FCRA).

Nor was there anything confusing or distracting about asking Warren to confirm his identity when he was being asked to authorize a consumer report about him. *See*, *Peikoff v. Paramount Pictures, Corp.,* 2015 U.S. Dist. LEXIS 63642, \*4 (N.D. Ca. Mar. 26, 2015) (ruling that a sentence certifying the truth of the statements on the disclosure and authorization form did not willfully violate the FCRA).

Warren also asserted in his Amended Complaint that Meijer's inclusion of required Equal Employment Opportunity statutory language somehow violated the FCRA. Not true. The Federal Trade Commission (the "FTC"), the federal agency charged with enforcing the FCRA, has stated that "in order to comply with the FCRA," before an employer obtains a consumer report, the employer "must certify" that it "will not discriminate against the applicant or employee or otherwise misuse the information, as provided by any applicable federal or state equal opportunity laws or regulations." The FTC webpage entitled "Using Consumer Reports: What Employers Need to Know" available at: https://www.ftc.gov/tips-advice/business-center/guidance/using-consumer-reports-what-employers-need-know. This is exactly what Meijer did here. Clearly, the meritlessness of Warren's attacks on Meijer's disclosure and authorization form is demonstrated by his complaints about EEO and non-discrimination

8

language that is not only recommended by the FTC, but was also required by the Equal Employment Opportunity Commission (EEOC).

*See*, https://www1.eeoc.gov/employers/poster.cfm.

In sum, the FCRA, the agencies and the courts all contradict Warren's attempts to artificially create a FCRA violation out of the inclusion of relevant, helpful, and mandated information in a FCRA disclosure and authorization form. Indeed, the test of whether information is impermissibly "extraneous" is whether it would confuse or distract an employee from the fact that he is authorizing a background check. *Just,* 2016 U.S. Dist. LEXIS 63126 at *14. For example, the inclusion of explanatory language in a disclosure and authorization form was upheld in *Burghy v. Dayton Racquet Club, Inc*., 695 F. Supp. 2d 689, 699 (S.D. Ohio Feb. 26, 2010). In *Just,* the court relied on two FTC opinions to hold that a disclosure form did not violate the FCRA by including information for the benefit of the employee that: "Teamwork requires dedication trust, and above all, honesty. It is a commitment we ask all our team members and potential team members," and language informing the consumer how to dispute the contents of the report and that the report does not create an employment contract." *Just*, 2016 U.S. Dist. LEXIS 63126 at *3-5 and *14.

Likewise, in *Coleman v. Kohl's Dep't. Stores, Inc.,* 2015 U.S. Dist. LEXIS 135746, *21 (N.D. Cal. Oct. 5, 2015), the court granted defendant's motion to dismiss a complaint alleging that Kohl's stand-alone disclosure form violated the FCRA purportedly because it was part of an overall employment application and contained the following information:

1. Kohl's would use a consumer reporting agency to obtain consumer reports or investigative consumer reports on the applicant;
2. the report could include personal information such as criminal history, past employment, personal references, drug offenses, and sex offender status;

9

      3.     the name, address, and contact information for the consumer reporting agency;
      4.     the method by which the applicant may dispute the report;
      5.     and that Kohl's may rely, in whole or in part, on the information gathered in the report to make hiring decisions. *Id*. at *7-8*.

The *Coleman* court ruled that the above language in Kohl's separate consent and disclosure form did not violate the FCRA because, as here, the disclosure and consent form was conspicuously labeled; its contents related solely to consumer reports; and it identified other relevant information that was not confusing or distracting, such as the consumer's right to review the report. *Id*. at *17*.

      Here, as in *Burgh, Just, and Coleman,* Meijer's Disclosure Form was "clear and conspicuous," consisted "solely" of the disclosure and authorization, was a separate document from the rest of Meijer's online application, and any information on the Disclosure Form was relevant, required by law, not confusing or distracting, and, therefore, did not violate the FCRA. Specifically, Meijer's form was a separate page, printed in bright blue ink and clearly labeled in bold capital letters in red ink, BACKGROUND CHECK CONSENT. *See,* Exhibit A. In the middle of the disclosure form, in a shaded bright blue ink box, it displayed in smaller white boxes with blue lettering that this form is the Background Check Consent. When Warren completed his on-line employment application, the disclosure and authorization form appeared on a separate computer screen. *See, Exhibit 1* to Am. Compl. (**Exhibit A**). Plaintiff electronically consented to the background check when he clicked the box "I Accept" on the Disclosure Form, and the "I Accept" automatically populated on the page of the electronic employment application. Nothing about Meijer's disclosure form violated the FCRA.

      c.     <u>**Meijer's Authorization was not "overbroad."**</u>

      Perhaps recognizing that his "extraneous language" arguments have no merit, Warren

10

also tried to assert that Meijer's authorization was somehow a "blanket authorization" that supposedly might allow "free access" to some unspecified private information. *See,* Am. Compl. ¶ 31-32. However, this assertion is equally meritless and entirely speculative. First, Warren ignores that Meijer is entitled to conduct background checks covering a wide number of areas relating to work history, education, criminal record, financial and medical history and even use of social media when considering an applicant for hire.[2] 15 U.S.C. §1681b(a)(3)(B). Because Warren agreed to allow access to his personal information including medical, financial and educational, as part of the background check process necessary for him to obtain employment with Meijer, no privacy rights were violated. *Larroque*, 2016 U.S. Dist. LEXIS 119246, at *15.

The FCRA defines "employment purposes" as those relating to "evaluation of a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. §1681a(h). The FCRA explicitly allows an employer to obtain a "blanket" one-time authorization for background checks at the beginning of employment that authorizes the employer to obtain consumer reports at "any time" during the employment relationship. 15 U.S.C. §1681b(b)(2)(A)(i) (allowing an employer to obtain consent for a background check at "any time"); *Kelchner v. Sycamore Manor Health Ctr.,* 135 Fed. Appx. 499, 500 (3d Cir. 2005) (ruling that the FCRA does not limit an employer's ability to obtain blanket authorization from an employee). Moreover, nothing about Meijer's authorization form requests, much less authorizes any recipient of a request for information to violate to violate any statute or rule that might limit the information that the recipient was lawfully entitled to disclose. Warren also ignores that any information provided in response to Meijer's authorization would go to Meijer's third party consumer reporting agency, not Meijer. Here, Warren's assertion is that some

---

[2] Indeed, the FTC has recognized that an employer, with certain narrow limitations, is entitled "to find out about the person's work history, education, criminal record, financial history, medical history, or use of social media." https://www.eeoc.gov/eeoc/publications/background_checks_employers.cfm.

unknown recipient of a request for information might violate their legal obligation and produce some unspecified information that might not fall within the subjects that the FCRA allows third party consumer reporting agencies to explore pursuant to a "blanket" authorization form that is expressly permitted by the FCRA. Clearly, Warren's allegation that Meijer's authorization form is somehow "over-broad" is as speculative as it is legally unsupported.

### d. **Plaintiff's FCRA Claim Must Be Dismissed Because He Cannot Show Any "Willful" Violation.**

In a completely conclusory fashion, Warren attempted to assert that Meijer "willfully" violated the FCRA. *See,* Am. Compl., ¶¶ 44, 45, 63(a)-(e) & 68(d)-(h). However, Warren was required to plead sufficient facts to allege that Meijer acted "willfully" because "willfulness" is an essential element of Warren's case in chief and, without it, he could never prove that Meijer violated the FCRA. 15 U.S.C. § 1681n(a)(1)(A); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59 (U.S. 2007); *Coleman v. Kohl's Dep't Stores, Inc.,* 2015 U.S. Dist. LEXIS 135746 (N.D. Cal. Oct. 5, 2015) (dismissing plaintiff's claim for violation of FCRA for failure to plead facts supporting allegation that defendant willfully violated the FCRA). "Willfulness may be established by showing that the defendant knew that its actions violated an FCRA requirement or acted in reckless disregard as to whether its actions violated an FCRA requirement." *Taylor v. Screening Reports, Inc.*, 2015 U.S. Dist. LEXIS 86262, *6 (N.D. Ill. July 2, 2015) (citing *Safeco Ins. Co.*, 551 U.S. at 56-57.). The *Safeco* Court defined the term "reckless" as "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" 551 U.S. at 68-69. Quite simply, Meijer cannot be liable under the FCRA unless Warren could establish that Meijer's interpretation of the statute is "objectively unreasonable." *Just*, 2016 U.S. Dist. LEXIS 63126 at *11-12 (citing *Safeco*, 551 U.S. at 70, n. 20). The issue of whether Meijer's reading of the FCRA was "objectively

12

unreasonable" is a question of law. *Van Straaten v. Shell Oil Prods. Co., LLC,* 678 F. 3d 486, 491 (7th Cir. 2012).

Here, Warren made no attempt to allege a plausible, non-speculative claim that Meijer knew or should have known that its actions violated the FCRA or that Meijer's reading of the FCRA stand-alone requirements was "objectively unreasonable." A review of *Exhibit A*, Meijer's Consent document, makes clear that it is a stand-alone document, it's single purpose was to disclose and seek authorization to run a background check of the employee, the authorization is bordered in color, has very little text, and is easy to understand. While Meijer believes that the inclusion of an EEO statement and the other information attacked by Warren did not violate the FCRA, even if wrong, its conduct, as a matter of law, cannot be said to be willful where Warren failed to articulate any facts to establish a plausible claim that Meijer's interpretation of the FCRA was knowingly wrong, reckless, or "objectively unreasonable." *Just*, 2016 U.S. Dist. LEXIS 63126 at *11. Here, where "the statutory text and relevant court and agency guidance allow[ed] for more than one reasonable interpretation" of the language that could be included in a stand-alone disclosure and authorization form, a willful violation simply cannot be established. *Id.* As the *Just* court pointed out, neither the FTC nor the federal appellate courts have provided guidance as to the acceptable parameters of the FCRA's stand-alone disclosure provision. 2016 U.S. Dist. LEXIS 63126 at *12. In the absence of such guidance, Meijer's interpretation of the FCRA cannot be "objectively unreasonable." *Id.*

The FCRA does not allow Warren to second-guess Meijer with the benefit of hindsight, when at the time of the alleged violation (in this case, in 2014), Meijer's stand-alone disclosure and authorization form was "objectively reasonable" and "could reasonably have found support in the courts." *Id.* Here, as a matter of law, the text of the statute, the agency opinions, and all of

13

the case law discussed above conclusively establishes that the information contained in Meijer's disclosure and authorization form was permitted by the FCRA. This necessarily precludes Warren from ever being able to establish that Meijer acted "willfully" with respect to its compliance with the FCRA or that Meijer's interpretation of the stand-alone statutory requirements was "objectively unreasonable." *Safeco*, 551 U.S. at p. 70 n. 20. To the contrary, Meijer's interpretation of the FCRA was "objectively reasonable" based on the law as it existed in 2014 and today. Nothing in the Disclosure Form was confusing or distracting as to divert Warren's attention away from authorizing the consent for a background check. As a result, Plaintiff cannot allege or prove a willful violation against Meijer and his FCRA claim should be dismissed for this reason as well.

## **CONCLUSION**

First, Plaintiff has failed to state a claim upon which relief can be granted because Meijer's Disclosure and Authorization Form comported with the statutory requirements of FCRA in all respects. Moreover, this Court does not have subject matter jurisdiction because Plaintiff has failed to plead any facts alleging an injury-in-fact or actual harm even assuming, *arguendo,* any alleged technical violation of FCRA and on this basis alone, Plaintiff's Amended Complaint should be dismissed for lack of standing. Lastly, and as a matter of law, Meijer's interpretation of FCRA as allowing the information discussed above to be included in its Disclosure and Authorization Form cannot possibly be held "objectively unreasonable," which precludes any chance that Warren could ever prove that Meijer "willfully" violated the FCRA.

For all of these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice.

                                                         Respectfully submitted,

                                                         **MEIJER, INC.**

                                                         By:   /s/ Paul E. Starkman
                                                               Counsel for Meijer, Inc.

Paul Starkman (ARDC #6188548)
Pamela J. Leichtling (ARDC #6183213)
Clark Hill PLC
150 North Michigan Avenue
Suite 2700
Chicago, IL 60601
Phone: 312-985-5900
Emails: pstarkman@clarkhill.com
         pleichtling@clarkhill.com


Cathrine F. Wenger (Michigan I.D.: P138761)
Meijer Great Lakes Limited Partnership
2929 Walker
Grand Rapids, MI 49544
Phone: 313-319-9962
Email: cathrine.wenger@meijer.com

15