IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DE ANTOINE WARREN, individually and as representative of the class,<br><br>        Plaintiff,<br><br>  v.<br><br>MEIJER, INC.,<br><br>        Defendant. | Case No: 16-cv-5589<br><br>Judge Elaine E. Bucklo |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THIS PROCEEDING**

In support of its Motion to Compel Arbitration and Dismiss or Stay This Proceeding, Defendant Meijer, Inc. ("Meijer"), through its attorneys, hereby submits the following memorandum of law:

### I. INTRODUCTION

On June 20, 2014, as a condition of his employment as supervisor for Meijer, Plaintiff, De Antoine Warren ("Plaintiff" or "Warren") was offered and agreed to a broad Arbitration Agreement.[1] Even though his Arbitration Agreement explicitly required him to arbitrate federal statutory claims, Warren nevertheless filed the instant lawsuit against Meijer alleging a single claim for violation of the Fair Credit Reporting Act ("FCRA").[2] Being unable to dispute that his Arbitration Agreement is enforceable and encompasses his claim, Warren blatantly ignores it.

---

[1] A copy of Warren's Dispute Resolution Agreement and Agreement for Final and Binding Arbitration and a copy of the Dispute Resolution Policy No. 0090 ("DRP") (collectively referred to as the "Arbitration Agreement") are attached as *Exhibits A-1 and A-2*, respectively, to the **Declaration of Jennifer Ganz** ("Ganz Decl."), attached as *Exhibit A,* attesting to the authenticity and Warren's acceptance of the Arbitration Agreement.

[2] In the alternative and in an abundance of caution, without waiving its position that this matter must be submitted to arbitration, Meijer concurrently filed a Motion to Dismiss Warren's FCRA claim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

1

However, because Warren expressly agreed to arbitrate the exact claim that he is now attempting to litigate against Meijer, this Court should compel him to arbitrate his claim and dismiss or stay the instant action.[3]

## II. STATEMENT OF FACTS

On May 9, 2014, Warren completed an online employment application for a position with Meijer. On a separate computer screen of his online employment application, Warren clicked the box labelled "Click here to agree" on the disclosure and consent form for a background check. *See,* Amended Compl. at Exhibit 1.

### A. <u>Warren's Electronic Agreement to Meijer's Arbitration Agreement.</u>

On June 20, 2014, on his first day of employment, Warren went through Meijer's onboarding process that involved reviewing and agreeing to electronic documents on Meijer's intranet and going through hard-copies of the documents with a HR representative.[4] *Declaration of Jennifer Ganz, ("Ganz Decl.") pars. 6-9 and attached hereto as Exhibit A; Exh. A-3.* During the onboarding process, Warren logged onto the Meijer intranet using his individualized Employee ID number. *Id. par. 8. Exh. A-3.* Warren was then presented with a computer screen entitled "Team Member Documents." *Id. par. 8; Exh. A-3.* The computer screen listed various "New Hire Agreements" in a column along the left side of the screen. *Id.* Among the "New Hire Agreements" listed on the "Team Member Documents" computer screen were Meijer's Dispute Resolution Policy and its Dispute Resolution Agreement. *Id. par. 8; Exhibits A-1, A-2 and A-3.* By clicking on the titles of these two documents on the computer screen, they would

---

[3] See *HTG Capital Partners, LLC v. Doe*, 2016 U.S. Dist. LEXIS 18458, *25 (N.D.Ill. Feb. 16, 2016)(recognizing the "growing trend … favoring dismissal where all claims are subject to arbitration.").

[4] Among the other important legal and tax documents that Warren completed during his onboarding process were his W 2 tax withholding consent, his I-9 form verifying his authorization to work, his acknowledgement of Meijer's harassment policy, among several others. *See, Exhibit A-3*.

2

have been displayed on the screen for Warren to read, although hard-copies of the documents were also made available for him to review. *Id. par. 8.* In order to agree or complete each of the onboarding documents, Warren had to click on a box on the computer screen that read "Click here to agree" in the column on the right-hand side of the screen directly across from the document name. *Id.* Clicking the "Click here to agree" box then changed it to set forth the date and time of agreement. *Id.* Warren had to click on the "Click here to agree" button next to each document listed on the "Team Member Documents" computer screen in order to move on to the next document and to complete the onboarding process. *Id.* If Warren had not agreed to the Meijer Arbitration Agreement, his onboarding process would have stopped and he would not have been employed as a Line Leader in Training. *Id.*

During his orientation on June 20, 2014, Warren first clicked on the "Click here to agree" box in order to electronically agree to the Dispute Resolution Agreement and then clicked another "Click here to agree" box in order to agree to the DRP. *Exhibits A-1 and A-2.* A screen shot of Warren's "Team Member Documents" computer screen shows that Warren agreed to Meijer's Dispute Resolution Agreement and its Dispute Resolution Policy ("DRP") at 06/20/2014 2:11:11PM and 06/20/2014 2:11:13PM, respectively. *Exhibit A, pars. 9, 13; Exhibit A-3.*

### B. <u>The Terms of Warren's Arbitration Agreement.</u>

The Dispute Resolution Agreement that Warren agreed to provided that if the parties were unable to resolve an employment claim through the voluntary methods of the DRP (which Warren never utilized), they would submit that claim to final and binding arbitration by a neutral arbitrator in accordance with the Rules of Arbitration in the DRP. *Exhibit A-1, par. 4.* The Dispute Resolution Agreement also stated, "[t]he parties agree to resolve, in accordance with the

3
205026497.2 40928/198729

provisions of the DRP, all employment-related claims or disputes that arise or are asserted while [an employee, referred to as a Team Member] is employed in any non-bargaining unit position."[5] *Exhibit A-1, par. 1.* It further stated that the "parties agree that this is an agreement pursuant to the Federal Arbitration Act ("FAA") and the FAA shall govern the interpretation and enforcement of the arbitration provisions in this Agreement." *Id. at par. 5.*

The Dispute Resolution Agreement incorporated the DRP, which stated that "you [Warren] must submit claims involving legally protected rights arising out of or related to your employment and/or separation from employment to final and binding arbitration." *See, Exhibit A-1, pars. 2-3; Exhibit A-2;* DRP at Section entitled "Scope", p. 1. Warren also agreed to the DRP rule that stated "claims subject to arbitration include claims for violation of any federal, state or local constitution, statute, ordinance, regulation or rule pertaining to employment and claims of violation of the common law." *See, Exhibit A-2*, DRP Rule 1.

C. **Warren's Supervisory Position with Meijer.**

As a team member (*i.e.*, a Meijer employee) employed in a non-bargaining unit position, the DRP applied to Warren because, in his position as a Line Leader in Training at the store, Warren was a supervisor in a non-bargaining unit position. *Declaration of Minesh Patel ("Patel Decl."), pars. 3, 6, 8* and attached hereto as *Exhibit B*. A Line Leader in Training was the second highest position in the Meijer store, reporting directly to the Store Director. *Id. par. 4.* As a Line Leader in Training, alone or with other store supervisors, Warren supervised employees, handled customer complaints, and managed various areas of the store as he learned the functions of a Line Leader. *Id. par. 8, 10.* Warren was assigned to manage the store's customer service department. *Id. pars. 6, 8.* In this role, Warren supervised over 50 employees,

---

[5] Only supervisors, such as Warren in his position as a Line Leader in Training, were employed in non-bargaining unit positions at the store because all non-supervisory personnel at the store where Warren worked were employed in bargaining unit positions. *Exh. B, Patel Decl., par. 2.*

4

including cashiers, utility workers, lead cashiers, and team leaders. *Id. par. 8.* Warren hired, fired, supervised, and evaluated the performance of the employees in his department and supervised other areas of the store when team leaders were absent. *Id. pars. 10(A)-(G).*

Warren was terminated by Meijer on August 11, 2015. Despite his agreement to arbitrate all "employment-related claims" and claims for violations of federal statutes, Warren filed an initial Complaint on May 5, 2016 and the instant Amended Complaint on August 24, 2016. Warren alleged that, as part of his online employment application to work with Meijer, Meijer provided him with a stand-alone disclosure and consent to background check form that supposedly did not comply with the FCRA. However, nowhere in his complaints did Warren even mention, much less attack his Arbitration Agreement. Because Warren has refused to submit his FCRA claim to arbitration, but instead has contumaciously attempted to litigate it, he has forced Meijer to timely file this motion to compel arbitration and to dismiss or stay this proceeding, as part of Meijer's responsive pleadings.[6]

### III.  ARGUMENT

#### A. The Parties' Arbitration Agreement Must Be Enforced Under the Federal Arbitration Act.

Warren's agreement to arbitrate, includes a provision of the Dispute Resolution Agreement, *Exhibit A-1, par. 5,* that explicitly stated that it was governed by the FAA. 9 U.S.C. §1 *et seq*. The FAA requires courts to "rigorously enforce" private arbitration agreements in accordance with their terms and to resolve any doubts about arbitrability in favor of arbitration. *American Express Co. v. Italian Colors Restaurant,* __ U.S. ___, 133 S. Ct. 2304, 2309,186 L. Ed. 2d 417 (2013) (reaffirming that arbitration agreements must be enforced pursuant to their terms and that federal statutory claims are arbitrable); *Gilmer v. Interstate/Johnson Lane Corp.,*

---

[6] Concurrently and in the alternative to this Motion, Meijer filed a motion to dismiss Warren's FCRA claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

500 U.S. 20, 23-24 (1991) (the FAA manifests a "liberal federal policy favoring arbitration agreements"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22-23 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Section 3 of the FAA refers to a stay of proceedings in federal courts, such as this Court, where (as here), the issue in the proceeding is referable to arbitration and requires courts to compel arbitration where, as also is true here, a party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. §§3-4; *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510-511 (1974), *reh'g denied,* 419 U.S. 885 (1974); *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580-81 (7th Cir. 2006). However, as noted above, there is a "growing trend" among the courts "favoring dismissal where all claims are subject to arbitration." *See HTG Capital Partners, LLC v. Doe*, 2016 U.S. Dist. LEXIS 18458, \*25 (N.D.Ill. Feb. 16, 2016). Although Meijer asserts that Warren's individual claim must be arbitrated, but not his class claim, this Court has discretion to dismiss or stay this proceeding.

In short, the FAA mandates arbitration where, as here: 1) a valid agreement to arbitrate exists; 2) the parties' dispute falls within the scope of that agreement; and 3) a party has refused to proceed to arbitration. All of these factors are present here. As discussing herein, the parties' Arbitration Agreement is enforceable and the issue in this proceeding (Warren's FCRA claim) is clearly referable to arbitration. By filing the instant lawsuit in this Court in violation of his Arbitration Agreement and by failing to agree to Meijer's motion to compel arbitration (despite its repeated requests that he do so), Warren has clearly refused to arbitrate and as a result, this Court should immediately compel Warren to arbitrate and dismiss or stay this proceeding. *See, Ineman v. Kohl's Corp.,* 2015 U.S. Dist. LEXIS 38296, at \*14 (W.D. Wis. Mar. 26, 2015)

("filing a lawsuit and opposing a motion to compel arbitration is evidence of plaintiff's refusal to arbitrate").

### 1. Warren and Meijer Entered Into a Valid and Enforceable Arbitration Agreement.

As a threshold matter, the basic ingredients of an enforceable arbitration agreement under federal and state law (offer, acceptance and consideration) are undoubtedly present here.[7] On June 20, 2014, as a condition of employment with Meijer and in order to complete the onboarding process for employment, Warren electronically accepted Meijer's offer to enter into an agreement to arbitrate all employment-related disputes by electronically signing the Arbitration Agreement. *Exhibits A, par. 9, A-1, A-2 and A-3*. Specifically, Warren had to input his individualized Employee ID and affirmatively agree to arbitrate by clicking the boxes entitled "Click here to agree" to agree to the one-page Dispute Resolution Agreement and Agreement for Final and Binding Arbitration and to agree to the DRP. *Exhibit A, par. 8. Id.* Warren's electronic agreement on both parts of the Arbitration Agreement created an enforceable agreement. *See, e.g., DeGroff v. Mascotech Forming Techs-Ft. Wayne*, 179 F. Supp. 2d 896, 902-03 (N.D. Ind. Dec. 6, 2001) (holding that if a plaintiff signed the arbitration agreement, even without full knowledge of its terms, his signature acts as an acceptance of the agreement's terms). *See, Shimkus v. O'Charley's, Inc.*, 2011 U.S. Dist. LEXIS 91529 (N.D. Ind. Aug. 16, 2011) (compelling arbitration where employer presented arbitration agreement electronically during onboarding process and the plaintiff was prompted and required to click "I agree"); *Ricci v. Sears Holding Corp.*, 2015 U.S. Dist. LEXIS 7617 (D.N.J. Jan. 23, 2015) (holding employee's electronic acknowledgement was valid acceptance of the Sears arbitration agreement where

---

[7] To the extent that state law applies here. Illinois provides the governing state law because Warren applied for a job with Meijer in Illinois, he signed all employment documents at Meijer's facility in Rolling Meadows, Illinois and he worked at the Rolling Meadows facility in Illinois. Illinois enforces arbitration agreements like the one at issue here. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 156 (Ill. 2006).

employees had to access the arbitration agreement online through the company's intranet and submit acknowledgements by clicking the "yes" button); *Rosas v. Macy's Inc.*, 2012 U.S. Dist. LEXIS 121400 (C.D. Cal. Aug. 24, 2012) (holding an employee's electronic signature was binding where the arbitration agreement was presented along with other important legal documents and the employee's personal ID was required to electronically complete the forms); *Buckhalter v. J.C. Penney Corp.*, 2012 U.S. Dist. LEXIS 136884 (S.D. Miss. Nov. 28, 2012) (employee's electronic signature on an arbitration agreement was binding because the company's electronic "onboarding" process for new hires required the creation of a unique employee ID number that the employee used to log into the company's online portal and electronically sign the arbitration agreement).

Likewise, Warren's agreement to arbitrate was also supported by valid consideration. The Seventh Circuit has repeatedly held that where, as here, both parties agreed to be bound by the arbitration process, it is undoubtedly sufficient consideration. *See, Oblix, Inc. v. Winiecki*, 374 F.3d 488 (7th Cir. 2004); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 368 (7th Cir. 1999) (finding sufficient consideration because both parties agreed to be bound by arbitration). As stated in *Oblix, Inc.,* consideration was also provided where, as is also true here, the employer "paid [plaintiff] to do a number of things; one of the things it paid [him] to do was agree to a nonjudicial dispute resolution for the employee's promise to arbitrate." 374 F.3d at 490-91.

Thus, this Court should also compel arbitration because there was an offer, acceptance and consideration to establish an enforceable agreement to "resolve, in accordance with the provisions of the DRP," all "employment-related claims or disputes" and claims for violation of federal statutes," including his claim for violation of the FCRA. *See, Exhibits A-1, par. 3 and A-2*, DRP, Rule 1.

8
205026497.2 40928/198729

### 2. The Parties' Arbitration Agreement Encompasses Warren's FCRA Claim.

Here, the law and the crystal clear language of his Arbitration Agreement and the law mandate arbitration, not litigation, of Warren's FCRA claim. First, the Arbitration Agreement here is an extremely broad one since Warren agreed to arbitrate claims "arising out of or relating to" his employment. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 399 (1967); *Welborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (characterizing arbitration clause covering all claims either "arising out of" or "relating to" parties' agreement as "a very broad, standard arbitration clause"). Where, as here, the parties' Arbitration Agreement is a broad one, (i) any possible doubt regarding arbitrability of a claim must be resolved in favor of arbitration; (ii) the strong presumption in favor of arbitrability must be applied with particular force; (iii) arbitration can be denied only if it can be said with positive assurance that the arbitration agreement here is not susceptible of an interpretation that covers the asserted dispute. *Exelon Generation Co., LLC v. Local 15, IBEW*, 540 F.3d 640, 646 (7th Cir. 2008); *See, also, AT&T Techs v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22-23 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Finally, as the party opposing arbitration, Warren has the burden of overcoming all of the above in order to preclude arbitration of his claim – a burden he could never meet. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000). Thus, arbitration is mandated here.

More importantly, the Arbitration Agreement entered into by Warren and Meijer clearly covers Warren's claim for violation of the FCRA. For one thing, Warren specifically agreed to arbitrate "claims for violation of any federal … statute," *Exhibit A-2, Rule 1,* which undoubtedly includes his claim for violation of the FCRA. Moreover, Warren's FCRA claim is undeniably an

"employment-related" claim and one that involved "legally protected rights arising out of or related to [his] employment," which are both explicitly covered by the Arbitration Agreement. (*Exhibit A-1, par. 3; Exh. A-2, p. 5*). Warren's claim involves his employment application and arises out of a consent for a background check that was obtained for "employment purposes" under the FCRA and was a condition of Warren's employment with Meijer. Thus, Warren's FCRA claim falls squarely within the scope of his Arbitration Agreement.

Certainly, there is nothing about the fact that Warren brought his claim under the FCRA that takes it outside the broad scope of his Arbitration Agreement. Claims for violation of the FCRA are arbitrable. *See, Collier v. Real Time Staffing Servs.*, 2012 U.S. Dist. LEXIS 50548, *5-6 (N.D. Ill. Apr. 11, 2012) (ruling that FCRA claims are subject to arbitration); *Mitchell v. Verizon Wireless*, 2006 U.S. Dist. LEXIS 15257, *9 (N.D. Ill. March 30, 2006) ("Plaintiff ignores the evidence that courts routinely deem FCRA claims arbitrable."). The U.S. Supreme Court has repeatedly held that such statutory claims are arbitrable. *Gilmer,* 500 U.S. at 26. Because Warren's FCRA claim falls within the scope of the parties' Arbitration Agreement and there is nothing about the FCRA that precludes arbitration, Meijer's motion to compel arbitration should be granted.

### B. Any Attacks on Specific Provisions of the Arbitration Agreement Cannot Preclude Arbitration of Warren's FCRA Claim.

Based on prior assertions by Plaintiff's counsel, he is likely to try to attack the enforceability of the class arbitration provision contained in the second paragraph of DRP Rule 23 of the parties' Arbitration Agreement.[8] He may also attempt to assert that it somehow taints the entire Arbitration Agreement and renders it unenforceable. However, as discussed below,

---

[8] The second paragraph of DRP Rule 23 states that "[t]he arbitrator shall not have the authority to consolidate the claims of other team members into one proceeding and shall not have the authority to fashion a proceeding as a class action or to award relief to a group of team members in one proceeding." *Exhibit A-2, DRP Rule 2, par. 2.*

these assertions are legally and factually baseless. Moreover, such assertions would be matters solely delegated to the arbitrator to decide, not this Court. *See, Exh. A-2, DRP Rule 23, par.1*; *Employers Insurance Company of Wausau v. Century Indemnity Company*, 443 F.3d 573, 577 (7th Cir. 2006) (holding that "the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve.").

Any possible doubt about the applicability of this rule is laid to rest by the fact that the Arbitration Agreement here explicitly delegates to the arbitrator, not this Court, the authority "to decide issues of arbitrability" and "interpret and apply [the] rules" of the DRP. *See Exhibit A-2*, Rule 23, par. 1. This delegation of authority to the arbitrator clearly includes any issue about the arbitrability of Warren's class claims and the enforceability of the second paragraph of DRP Rule 23 precluding the arbitrator from consolidating claims of other team members or fashioning a proceeding as class action. *Id.* The U.S. Supreme Court has held that this type of clause in the parties' Arbitration Agreement (commonly known as a "delegation clause") must be enforced so that the arbitrator (not this Court) must be allowed to decide the arbitrability of Warren's class claims in the first instance. *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 65 (2010); *Johnson v. Long John Silver's Rest's, Inc.,* 320 F.Supp. 2d 656, 668 (M.D. Tenn. June 7, 2004) *aff'd,* 414 F.3d 583 (6th Cir. 2005).

But even if this Court were to address this issue, the class action provisions in the Arbitration Agreement at issue here are valid and enforceable, notwithstanding the recent Seventh Circuit's decision, in *Lewis v. Epic Systems Corp.,* 823 F.3d 1147 (7th Cir. 2016) *petition for writ of certiorari filed Sept. 2, 2016.* Indeed, the *Lewis* case is clearly distinguishable on the law, its facts, and the contract before it. In *Lewis*, the court ruled that, as applied to a non-supervisory "technical writer," the provisions in Epic Systems' arbitration agreement that

prohibited collective or class arbitration proceedings impermissibly interfered with his rights to engage in concerted activities protected by Sections 7 and 8 of the National Labor Relations Act ("NLRA"). 29 U.S.C. §§157 & 158; *Lewis*, 823 F.3d at 1146, 1156. However, as noted above, the plaintiff in *Lewis* was a "technical writer" and there was no suggestion that he was a supervisor. In fact, the Seventh Circuit held that he was covered by the NLRA and, therefore, not a supervisor. *Id. at 1151*.

Here, in stark contrast, Warren was a "Line Leader in Training," *Exhibit B, par. 6*. He was uncontrovertibly a supervisor[9] employed at Meijer in a non-bargaining unit position. *Id.* As a supervisor, Warren was not covered by the NLRA and simply did not have rights under NLRA Sections 7 or 8 to engage in concerted activities. *Hanna Mining Co. v. District 2, Marine Engineers Beneficial Assn.,* 382 U.S. 181, 188 (1965) (holding that Section 7 of the NLRA does not bestow upon supervisory employees the rights to engage in self-organization, collective bargaining, and other concerted activities under the umbrella of Section 8 of the Act); *Monotech of Mississippi v. NLRB,* 876 F.2d 514, 517 (5th Cir. July 5, 1989) (ruling that anyone who exercises independent judgment in the execution or recommendation of any of the functions listed" in section 2(11) [NLRA definition of "supervisor"] is a supervisor and is not entitled to engage in concerted activity pursuant to the NLRA).

As a "Line Leader in Training," Warren hired, fired and supervised personnel at Meijer's store and exercised independent judgment in performing his supervisory responsibilities. *Exhibit B par. 8-10.* During his employment as Line Leader in Training at the Meijer store from June 20, 2014 until his termination on August 11, 2015, Warren performed the following supervisory

---

[9] "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C.S. §152(11).

12

activities which reflect that, as a Line Leader position, he was a supervisor since: (a) Warren made hiring decisions. Warren was the final interviewer and decision-maker on many hiring decisions. Specifically, Warren was responsible for hiring many employees at the Meijer store, including at least 5 utility clerks, several cashiers and general store employees. Warren also made final hiring recommendations at a mass hiring event for the Meijer store, *Id. par. 10*; (b) Warren also terminated the employment of many employees at the Meijer store, including multiple cashiers in his department for job performance issues, *Id, par.10;* (c) Warren supervised and evaluated the job performance of the employees in his customer service department and elsewhere in the store, he completed their written performance reviews and issued performance review reports to many employees at the Meijer store, *Id. par. 10*; (d) Warren determined the schedules of many Meijer store employees and made exceptions and changes to their schedules, *Id. par. 10*; (e) Warren was also responsible for investigating and resolving employee complaints, *Id. par. 10;* and (f) Warren investigated and resolved customer complaints, including having the authority to settle or otherwise resolve those customer complaints. *Id. par. 10*. Here, contrary to the plaintiff in *Lewis,* Warren was a supervisor who was not covered by the NLRA and had no right to engage in NLRA-protected concerted activities. Therefore, the Arbitration Agreement's provisions precluding the arbitrator from fashioning class arbitration proceedings for Warren could not have interfered with his NLRA rights (because he had none), which means that the reason why the Seventh Circuit invalidated the class action waiver in *Lewis* simply does not apply here. Because the class arbitration provisions in Warren's Arbitration Agreement do not violate the NLRA, they are valid and must be enforced.

Yet another factor distinguishing *Lewis* from this case is that the arbitration agreement at issue in *Lewis* contained a clause that specifically stated that "if the collective-action waiver is

13

unenforceable, then any collective claim must proceed in court, not arbitration." *Lewis*, 823 F.3d at 1156. The Seventh Circuit held that the parties' agreement on this language was outcome determinative and invalidated the arbitration agreement before it in accordance with its terms. *Id.* However, no such language is present here.

Contrary to the agreement in *Lewis,* Warren's Arbitration Agreement contained two severability clauses, including DRP Rule 29 that was entitled "Severability" which stated: "[i]f any of [the DRP's] rules or parts thereof are determined by any court with jurisdiction to be unlawful, invalid, or unenforceable, … ***all remaining rules and provisions shall continue in full force and effect***." *Exhibit A-2*, Rule 29 (emphasis added). Therefore, even if the class arbitration provisions in Warren's Arbitration Agreement could be invalidated (and there is no legal basis to do so), the severability clauses in his Arbitration Agreement require that all remaining provisions continue in full force and effect, including the provisions that compel arbitration of Warren's individual claim. *Thomas v. Port II Seafood & Oyster Bar, Inc*. 2016 U.S. Dist. LEXIS 89589, *10-11 (S.D. Ala. July 8, 2016). *See*, *also*, *Spinetti v. Service Corp. Intern.,* 324 F.3d 212, 219 (3d Cir. 2013) (recognizing that severability clauses in arbitration agreements should be enforced).

Finally, any attempt by Warren to attack the class arbitration provisions in his Arbitration Agreement would be ultimately unavailing because, even if they could be invalidated, it would merely leave his Arbitration Agreement silent as to the arbitrability of class claims. It is black-letter law that Meijer cannot be forced to arbitrate class claims when the parties' Arbitration Agreement is silent on the issue. *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 684 (2010)(holding that consolidated or class arbitrations cannot be compelled when the parties' arbitration agreement is silent on the issue); *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79,

83 (2002)( "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269, 271 (7th Cir. 1995) (stating "[w]e conclude that absent a provision in the parties' arbitration agreement providing for class treatment of disputes, a district court has no authority to certify class arbitration."); *Henderson v. U.S. Patent Comm'n, Ltd.,* 2016 U.S. Dist. LEXIS 70157, *12 (N.D. Ill. May 27, 2016). In *Henderson,* the court granted defendant's motion to compel arbitration on an individual basis and prohibited the class action arbitration because, as here, the parties had not expressly or implicitly agreed upon class action arbitration and the court determined that it lacked the authority to rewrite the parties' agreement to impose class action arbitration. *Id. at *25-26, 28*. The rule in *Stolt-Nielsen, Howsam, Champ* and *Henderson* precludes the arbitration of any class claims in the absence of any agreement to do so and only Warren's individual claim should be submitted to arbitration, not his class action claim.

## CONCLUSION

Here, the parties entered into an enforceable Arbitration Agreement that encompasses Warren's claim of a FCRA violation, yet Warren refuses to arbitrate.. For all of the reasons stated above, this Court should grant Meijer's motion to compel arbitration and dismiss or stay this proceeding pending arbitration.

Respectfully submitted,

**MEIJER, INC.**

By: /s/ Paul E. Starkman
    Counsel for Meijer, Inc.

Paul E. Starkman (ARDC #6188548)
Pamela J. Leichtling (ARDC #6183213)
Cathrine F. Wenger (Michigan I.D.: P38761)
Clark Hill PLC
150 North Michigan Avenue, Suite 2700
Chicago, IL 60601
Phone: (312) 985-5900

15